Lowenstein Sandler LLP
Leiv Blad (SBN 151353)
Zarema Jaramillo (*pro hac vice forthcoming*)
Katie Glynn (SBN 300524)
2200 Pennsylvania Avenue, Suite 500E
Washington, District of Columbia 20037
Telephone: 202.753.3800
Facsimile: 202.753.3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
kglynn@lowenstein.com

390 Lytton Avenue
Palo Alto, California 94301
Telephone: 650.433.5800
Facsimile: 650.328.2799

Attorneys for Non-Party
DAVID A. SPECTOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bruce Jacobs,<br><br>    Plaintiff,<br><br>    v.<br><br>Bank of America Corporation, et al.<br><br>    Defendants. | Case No. 2:17-mc-97<br><br>(United States District Court, Southern District of Florida, Miami District, Florida Case No. 1:15-cv-24585-UU)<br><br>**NON-PARTY DAVID A. SPECTOR'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED** |

NON-PARTY DAVID A. SPECTOR'S NOTICE OF MOTION AND MOTION TO QUASH
SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

**PLEASE TAKE NOTICE** that, Pursuant to Federal Rule of Civil Procedure 45, non-party David A. Spector hereby moves the Court for an Order quashing the Subpoena to Testify at a Deposition in a Civil Action, served upon him by Relator Bruce Jacobs in *Jacobs v. Bank of America Corp.*, No. 1:15-cv-24585-UU, a case pending in the Southern District of Florida.

In support of its Motion, Mr. Spector relies on the accompanying Memorandum of Points and Authorities, Declaration of David A. Spector, Declaration of Leiv Blad, Request for Judicial Notice, and all accompanying exhibits attached thereto. This Motion is made following the conference of counsel pursuant to C.D. Cal. L.R. 7-3, which took place on July 17, 2017.

**PLEASE TAKE FURTHER NOTICE** that Mr. Spector respectfully requests oral argument on the Motion.

Dated: July 26, 2017                                LOWENSTEIN SANDLER LLP

                                                                By:     */s/ Leiv Blad*
                                                                        Leiv Blad (SBN 151353)

                                                                        Attorney for Non-Party
                                                                        DAVID A. SPECTOR

**TABLE OF CONTENTS**

**Contents**
I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF FACTS ............................................................................................. 2
III. ARGUMENT .................................................................................................................. 5
   A. Mr. Spector Has No Relevant Knowledge of CFC's Policies or Practices Post-September 2006 .................................................................................................. 6
   B. Plaintiff Has Failed to Establish a Need for Mr. Spector's Testimony Regarding CFC's Policies and Practices Pre-September 2006 ................................................. 8
   C. Plaintiff Has Failed to Attempt to Obtain the Information He Seeks from Less Intrusive Discovery Methods .................................................................................... 9
IV. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affinity Labs of Texas v. Apple, Inc.*,
  No. C-09-4436, 2011 WL 1753982 (N.D. Cal. May 9, 2011) .......................... 10, 11

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. May 19, 2014) ............................................................ 5, 6

*Audio MPEG, Inc. v. HP Inc.*,
  No. 16-mc-80271, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017) ............................ 8

*Cusomano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) ................................................................................... 8

*Evans v. F.W. Woolworth Co.*,
  No. 97-4320, 1998 WL 811790 (S.D. Fla. Oct. 22, 1998) ...................................... 7

*Great Am. Ins. Co. v. Veteran's Support Org.*,
  166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015) ......................................................... 5

*K.C.R. v. Cty. of Los Angeles*,
  No. cv-13-3806, 2014 WL 3434257 (C.D. Cal. July 11, 2014) ........................... 6, 9

*Myhrvold v. Lodsys Grp., LLC*,
  No. C-13-1173, 2013 WL 5488791 (W.D. Wash. Sept. 27, 2013) ......................... 6

*Nalco Co. v. Chem-Aqua, Inc.*,
  No. 14-mc-80183, 2014 WL 3420463 (N.D. Cal. July 10, 2014) ........................... 9

*Noveshen v. Bridgewater Assocs., LP*,
  No. 13-61535-CIV, 2016 WL 824640 (S.D. Fla. Feb. 26, 2016) .................... 10, 11

*Salter v. Upjohn Co.*,
  593 F.2d 649 (5th Cir. 1979) ................................................................................ 10

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
  310 F.R.D. 523 (S.D. Fla. 2015) ....................................................................... 6, 10

*Trigeant Ltd. v. Petroleos de Venequela, S.A.*,
  No. 08-80584, 2009 WL 10668731 (S.D. Fla. May 5, 2009) ................................. 8

*United Techs. Corp. v. Mazer*,
  No. 05-80980, 2007 WL 788877 (S.D. Fla. Mar. 14, 2017) ................................... 6

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
  No. 06-80352, 2007 WL 218771 (N.D. Cal. Jan. 29, 2007) ................................... 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 45 ................................................................... 1, 5, 6

Federal Rule of Civil Procedure 26(c) ..................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), non-party David A. Spector respectfully submits this Memorandum of Points and Authorities in Support of his Motion to Quash the Subpoena to Testify at a Deposition in a Civil Action (the "Deposition Subpoena") Mr. Spector received from Relator Bruce Jacobs ("Plaintiff") in *Jacobs v. Bank of America Corp.*, Case No. 1:15-cv-24585-UU, pending in the Southern District of Florida (the "Action").

Mr. Spector is not a party to the Action, and he has no knowledge that merits his deposition as a third party. The Action concerns Defendants' alleged conduct after a consent decree was entered in 2012, yet Mr. Spector resigned from Countrywide Financial Corporation ("CFC") in 2006 and was not involved in CFC's operations after he left. If Plaintiff seeks information about Defendants' recent conduct, Mr. Spector has no relevant knowledge. If Plaintiff seeks information about Defendants' pre-2007 conduct, assuming that information could even be relevant, Mr. Spector has no unique knowledge because there are many current employees of Defendants who can provide that information. In either instance, Plaintiff has no need for information from Mr. Spector that would justify imposing the burden of a deposition on him.

Plaintiff has offered two justifications for the Deposition Subpoena. First, he argues that Mr. Spector may have knowledge of Defendant's process for using stamps to affix signatures to mortgage documents at issue in this litigation. Mr. Spector has no knowledge of that process after he left CFC, and Defendants' current employees may testify about that process prior to 2007, to the extent it is relevant to Plaintiff's allegations. Plaintiff has suggested that there was a process unique to Mr. Spector's signature that would merit his deposition, but that is not true. CFC adopted a policy and procedure for affixing stamps to mortgage documents generally, not with respect to any one person.

Second, Plaintiff argues that Mr. Spector's deposition is necessary because "people lie," and his testimony may be useful in impeaching the testimony of other witnesses. That is an insufficient justification for imposing such a burden on a third party, especially because Plaintiff

admits that he has not taken a single deposition of any current or former employee of CFC or any other Defendant. Plaintiff has no idea whether he needs Mr. Spector's testimony because, as he freely admits, he has not attempted to determine whether Mr. Spector has unique knowledge that Plaintiff cannot obtain from another source.

Mr. Spector is the Chief Executive Officer of a Fortune 500 public company and, while employed by CFC, he served as a Senior Managing Director. Under federal law, a deposition of such a high-level executive is appropriate only when (1) the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) the party seeking the deposition has exhausted other less intrusive discovery methods. Plaintiff cannot satisfy this test because he has not attempted to satisfy it. The Deposition Subpoena therefore should be quashed.

## II.   STATEMENT OF FACTS

Mr. Spector is not a named defendant in the Action. Plaintiff has brought claims against Defendants Bank of America Corporation, Bank of America, N.A., BAC Home Loan Servicing L.P., Countrywide Home Loans, Inc., Countrywide Financial Corporation, Countrywide Mortgage Ventures, L.L.C., Countrywide Bank, F.S.B., and Recontrust Company, N.A. (collectively, "Defendants") under the False Claims Act. In particular, Plaintiff alleges that Defendants violated the False Claims Act by (1) entering into a Consent Judgment with the Department of Justice in April 2012 even though Defendants intended to continue presenting misleading and deceptive documentation in foreclosure actions and (2) conspiring in submitting false claims for FHA insurance benefits, knowing that the resulting conveyances of title to the foreclosed properties to HUD were not "good marketable title" as required by HUD regulations. Second Am. Compl. (Dkt. No. 79), ¶¶ 45-55. After the Court's Omnibus Order on Defendants' Motion to Dismiss (Dkt. No. 116) and the Order on the Motion for Reconsideration (Dkt. No. 151), the only claims that remain relate to Defendants' alleged violation of the False Claims Act through an implied certification violation, based on Defendants' claims for FHA mortgage insurance benefits on foreclosures "obtained by relying on misleading rubber-stamped endorsements affixed to promissory notes and purported assignments of mortgages by the

Mortgage Electronic Registration System, Inc. ('MERS'), without MERS owning an interest in the underlying notes." Order on Motion for Reconsideration at 2.

Notably, the Court's Order on the Motion to Dismiss makes clear that the conduct at issue in the Complaint occurred *after* Bank of America entered into the April 2012 Consent Judgment with the Department of Justice. *See* Omnibus Order on Motion to Dismiss at 13 ("Plaintiff's claims hinge not on conduct uncovered before the Consent Judgment, but rather on Defendants' conduct after entry of the Consent Judgment.").

Mr. Spector was employed by Defendant CFC from 1990 until he resigned in 2006. Declaration of David A. Spector in Support of Non-Party David A. Spector's Motion to Quash Subpoena to Testify at a Deposition in a Civil Action ("Spector Decl."), ¶ 4; *see also* Second Am. Compl., ¶ 34 (specifically noting that Mr. Spector resigned in 2006). While at CFC, he served as Senior Managing Director, Secondary Marketing. Spector Decl., ¶ 4. Mr. Spector has remained in the financial services industry and currently serves as President and Chief Executive Officer of PennyMac Financial Services, Inc. Spector Decl., ¶ 3. The only connection between Mr. Spector and the Action is that Mr. Spector's signature allegedly had been stamped onto promissory notes outside of his presence, without his present intention to adopt his signature, and after he had already resigned from CFC. Second Am. Compl. ¶¶ 33-35; 40; 56.

On July 10, 2017, Plaintiff served the third-party Deposition Subpoena on Mr. Spector, requesting his attendance at a deposition on July 27, 2017. Declaration of Leiv Blad in Support of Non-Party David A. Spector's Motion to Quash Subpoena to Testify at a Deposition in a Civil Action ("Blad Decl."), Exh. A. The Deposition Subpoena contained no topics. Needing to understand the scope of the Deposition Subpoena to weigh the burden it created, Mr. Spector's counsel requested a list of deposition topics. Blad Decl., ¶ 5. Plaintiff's counsel refused to provide any more detail than to state that the deposition would concern "topics relevant to the claims and defenses in the action, including (but, not limited to) the possible impeachment of parties or witnesses who may reasonably be expected to offer evidence concerning those topics." Blad Decl., ¶ 5; *see also* Blad Decl., Exh. B. Mr. Spector's counsel thereafter requested a meet and confer to discuss the scope of the Deposition Subpoena. *Id.* Plaintiff's counsel started the

July 14, 2017 meet and confer by stating that he viewed Mr. Spector as a hostile witness and therefore had no obligation to provide any more details regarding the deposition. Blad Decl., ¶ 6. As the meet and confer continued, however, Plaintiff's counsel stated that the Deposition Subpoena sought Mr. Spector's testimony on the following topics:

- Whether Mr. Spector authorized anyone to use his stamp to endorse documents while employed at CFC;

- Whether Mr. Spector authorized anyone to use his stamp to endorse documents after he resigned from CFC;

- Defendants' practices and policies related to the use of stamps while he was employed at CFC; and

- Defendants' practices and policies related to the use of stamps after he resigned from CFC.

*Id.* The parties met and conferred once again to discuss these topics on July 17, 2017. Blad Decl., ¶ 9. During the meet and confer, Mr. Spector's counsel laid out his position regarding the topics discussed on July 13. *Id.* Regarding the first two topics, Mr. Spector proposed providing a sworn declaration stating that he authorized others to use his stamp for endorsements while he was employed at CFC, but did not authorize anyone to use his stamp after he resigned. *Id.*; *see also* Spector Decl., ¶¶ 6-9. For the third topic, Mr. Spector confirmed that he has no knowledge regarding CFC's practices and policies after he left the company. Blad Decl., ¶ 9; *see also* Spector Decl., ¶ 10. With respect to the fourth topic, Mr. Spector proposed that the information sought, if even relevant, could more appropriately be provided by a current employee of Defendants without having to burden a third party. Blad Decl., ¶ 9; *see also* Spector Decl., ¶ 7.

Plaintiff rejected Mr. Spector's proposal. Blad Decl., ¶ 10. Plaintiff's only justification was that a current employee of Defendants may lie. *Id.* Plaintiff asserted that he needed Mr. Spector's testimony to impeach the testimony of Defendants' witnesses. *Id.* When Mr. Spector's counsel asked whether Plaintiff had taken any steps to determine whether Mr. Spector's deposition was necessary, Plaintiff's counsel admitted that it had not, and that not a single employee of Defendants had been deposed. *Id.* Plaintiff could not confirm whether the testimony it was seeking from Mr. Spector was even necessary, as it had not even attempted to

obtain the evidence from the parties to the Action. *Id.*

During the meet and confer, Mr. Spector's counsel explained that a sworn declaration expressing the following facts would address Plaintiff's concerns: (1) Mr. Spector authorized others to use his stamp while employed at CFC; (2) he did not authorize the use of his signature after he left; and (3) he is not aware of anything that occurred at CFC after he resigned in 2006. Blad Decl., ¶ 9. He further explained that, to the extent CFC's policies and practices prior to 2006 are relevant to this Action, Plaintiff can obtain testimony regarding this topic from Defendants, without burdening a non-party. *Id.*

Plaintiff's only attempt at a compromise was to request that Mr. Spector produce all prior deposition transcripts, exhibits, or affidavits produced in *any* prior matter, regardless of the subject matter and with no time limitation. Blad Decl., ¶¶ 7; 11. Even if Mr. Spector provided these documents, Plaintiff would reserve the right to subpoena Mr. Spector once again for his deposition testimony in this Action. *Id.* Mr. Spector considered this proposal, but first wanted to hear from Plaintiff some basis for finding his testimony relevant and so necessary to Plaintiff's case that the need outweighs the burden on Mr. Spector. Blad Decl., ¶ 11.

At this point in the meet and confer process, Plaintiff refused to accept Mr. Spector's sworn declaration in lieu of a deposition and would not modify the Deposition Subpoena. Blad Decl., ¶ 12. Mr. Spector therefore informed Plaintiff that it would seek relief from the Court. *Id.*

### III. ARGUMENT

Federal Rule of Civil Procedure 45 provides that the court "*must* quash or modify a subpoena" that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). With respect to non-party subpoenas, courts must balance the issuing party's need for discovery against the burden imposed upon non-parties. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. May 19, 2014); *see also Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015). In particular, courts look to factors such as relevance, need of the party for the information requested, breadth of the request, the time period covered by the request, the particularity with which the party describes the requested information, and the burden imposed. *Id.* "[T]he status of the person as a non-

party is a factor often weighing against disclosure." *United Techs. Corp. v. Mazer*, No. 05-80980, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2017); *see also Amini Innovation*, 300 F.R.D. at 409 ("the fact of nonparty status may be considered by the court in weighing the burdens imposed") (internal quotations omitted). Further, when a subpoena seeks the testimony of a senior executive, the requesting party must show that the senior executive has unique knowledge of the facts at issue and that it first attempted to obtain the necessary information from a less intrusive source. *K.C.R. v. Cty. of Los Angeles*, No. cv-13-3806, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014); *see also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015).

The Deposition Subpoena should be quashed because Plaintiff has failed to identify any need for Mr. Spector's deposition testimony. To the extent Plaintiff wishes to depose Mr. Spector regarding Defendants' actions, policies, or procedures after September 2006, Mr. Spector has no personal knowledge. To the extent Plaintiff wishes to depose Mr. Spector regarding CFC's policies while he was an employee, Plaintiff has failed to identify any need that would outweigh the substantial burden that the deposition would place on Mr. Spector. Finally, given that Mr. Spector currently serves as CEO of another company, and was a senior executive when he was employed by CFC, it is improper for Plaintiff to seek his testimony without first attempting to obtain the needed information from a lower-level employee with more direct knowledge of the policies and practices in place.

### A. Mr. Spector Has No Relevant Knowledge of CFC's Policies or Practices Post-September 2006

A subpoena is overly burdensome if it seeks deposition testimony from a non-party with no personal knowledge of the subject matter. *Myhrvold v. Lodsys Grp., LLC*, No. C-13-1173, 2013 WL 5488791, at *3 (W.D. Wash. Sept. 27, 2013) (quashing subpoena because the information sought "is of scant relevance" and the issuing party would "obtain little or no relevant information" from the subpoenaed party); *see also* Fed. R. Civ. P. 45(c)(3)(A)(iv) advisory committee's note to 1991 amendment (requiring testimony from someone "known to have no personal knowledge of matters in dispute" provided as an example of undue burden).

1  To the extent the Deposition Subpoena seeks Mr. Spector's testimony regarding CFC's policies
2  and practices after 2006, it should be quashed because Mr. Spector has no knowledge of CFC's
3  policies and practices after his resignation. Spector Decl., ¶ 10. In fact, Mr. Spector does not
4  possess any information relevant to any of the claims or defenses at issue in the Action. *Id.* As
5  the Court's Order made clear, the Plaintiff's claims turn on conduct that occurred *after* April
6  2012, six years after Mr. Spector left CFC. *See* Omnibus Order on Motion to Dismiss at 13. It is
7  unreasonable to demand that Mr. Spector testify about anything that happened after his
8  resignation. Indeed, a California Superior Court has already expressly held that "it cannot be
9  logically argued that Spector would have any information on an endorsement that may have
10 occurred sometime after his departure from Countrywide." Request for Judicial Notice, Exh. A.
11     The persons who would have knowledge regarding CFC's policies and practices post-
12 2006 would be Defendants' own employees. Because Plaintiff may obtain this information from
13 the parties to this matter, he cannot argue that there is a legitimate need for Mr. Spector's
14 deposition. *Visto Corp. v. Smartner Info. Sys., Ltd.*, No. 06-80352, 2007 WL 218771, at *4
15 (N.D. Cal. Jan. 29, 2007) (denying motion to compel compliance with third party subpoena
16 because "there is nothing in the record to suggest that [the non-party] had data or documents not
17 available from [the parties] or from public sources"); *Evans v. F.W. Woolworth Co.*, No. 97-
18 4320, 1998 WL 811790, at *1 (S.D. Fla. Oct. 22, 1998) (quashing deposition subpoena because
19 "[t]he best evidence of the factual information" was in the parties' documents, and "compelling
20 the deposition testimony of . . . a non-party is an undue burden").
21     Mr. Spector offered to provide Plaintiff with a declaration stating that he had no personal
22 knowledge of CFC's practices and policies after he resigned. Blad Decl., ¶ 9. Mr. Spector's
23 declaration, attached hereto, makes clear that any deposition regarding events that occurred at
24 CFC after he resigned would be fruitless. Not only does he have no personal knowledge
25 regarding these events, but Defendants themselves can provide the information requested. Given
26 the information Mr. Spector has offered to provide in a declaration, and the information already
27 accessible from Defendants, a deposition of Mr. Spector would serve no purpose.
28

### B. Plaintiff Has Failed to Establish a Need for Mr. Spector's Testimony Regarding CFC's Policies and Practices Pre-September 2006

To the extent Plaintiff seeks information regarding CFC's policies and practices during Mr. Spector's employment, Plaintiff has failed to show how such information is relevant given that these policies and practices would have occurred six years before the Consent Judgment. Even if this information was relevant, the minimal benefit Plaintiff would receive from a deposition, if any, would be substantially outweighed by the burden the Deposition Subpoena places on Mr. Spector. *Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847, at *4 (N.D. Cal. Mar. 10, 2017) (quashing deposition subpoena because the party "for the most part, failed to show relevance, and because what relevant material there is could be more easily obtained from other sources without causing a burden to non-party"); *Trigeant Ltd. v. Petroleos de Venequela, S.A.*, No. 08-80584, 2009 WL 10668731, at *4 (S.D. Fla. May 5, 2009) (quashing subpoena because the court was "not convinced that all of the information sought [was] relevant" or "that all of the information sought is necessary").

Plaintiff cannot reasonably argue that Mr. Spector's testimony regarding pre-2006 policies and practices is necessary, particularly because Plaintiff could instead obtain this information from Defendants' current employees who were also employed at CFC during the same time as Mr. Spector. Thus far, Plaintiff has not even *attempted* to do so. Plaintiff has not deposed a *single* witness, including any of Defendants' employees, in an attempt to seek the information he now requests from a third-party. It is unreasonable for Plaintiff to harass Mr. Spector with this Deposition Subpoena before first determining whether the information sought can be obtained from a party in this Action.

Plaintiff's only reason for requiring additional testimony on these topics from a non-party was that an employee of Defendants may lie. Blad Decl., ¶ 10. This alleged need is insufficient to overcome the burden of the Deposition Subpoena. *See Cusomano v. Microsoft Corp.*, 162 F.3d 708, 712 (1st Cir. 1998) (applying balancing test and denying motion to compel materials from third-party "for purposes akin to impeachment"). There are additional avenues for Plaintiff to impeach a witness without requiring the deposition of a third-party with no unique knowledge

regarding the topics at issue. Further, Plaintiff does not even know that this deposition testimony will be necessary. Without first attempting to depose an employee of Defendants, it is unclear why Plaintiff has any reason to believe these employees would lie under oath.

Mr. Spector has offered another less burdensome alternative to Plaintiff—a sworn declaration providing discrete information. *See, e.g., Nalco Co. v. Chem-Aqua, Inc.*, No. 14-mc-80183, 2014 WL 3420463, at *2 (N.D. Cal. July 10, 2014) (finding an offer of a sworn declaration stipulating to certain foundational facts was a "reasonable" alternative, and ordering that "[n]o other deposition topics [ ] be permitted" since "a broader deposition would be unduly burdensome"). When Mr. Spector offered this alternative, Plaintiff rejected it outright. Blad Decl., ¶¶ 9; 10. However, Mr. Spector's Declaration, submitted alongside this Motion, clearly gives Plaintiff the information he needs without subjecting Mr. Spector to the burdens of preparing for and attending a deposition.

Mr. Spector's offer of providing a sworn declaration in lieu of the deposition is more than generous. Even though Plaintiff has failed to show that Mr. Spector's testimony is relevant or necessary, the declaration provides Plaintiff with the discrete information requested without requiring Mr. Spector to prepare for and attend a deposition in a case related to events that occurred long after he left the company.

### C. Plaintiff Has Failed to Attempt to Obtain the Information He Seeks from Less Intrusive Discovery Methods

"Courts have often observed that discovery seeking the deposition of high-level executives (so called 'apex' depositions) creates 'a tremendous potential for abuse or harassment' that may require the court's intervention for the witness's protection under Rule 26(c)." *K.C.R.*, 2014 WL 3434257, at *3 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)).[1] "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less

---

[1] Regardless of whether the court decides to apply precedent from California or Florida, jurisdictions in both states have adopted the federal apex doctrine. *See, e.g., K.C.R.*, 2014 WL 3434257, at *3; *Apple*, 282 F.R.D. at 263; *Sun Capital Partners*, 310 F.R.D. at 527.

intrusive discovery methods." *Affinity Labs of Texas v. Apple, Inc.*, No. C-09-4436, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). *See also Noveshen v. Bridgewater Assocs., LP*, No. 13-61535-CIV, 2016 WL 824640, at *4 (S.D. Fla. Feb. 26, 2016) ("the apex doctrine applies to high-ranking officials, by virtue of their position, because they are vulnerable to numerous harassing depositions and need some measure of protection from the courts"); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (upholding ruling that plaintiff depose lower level employees with "more knowledge of the facts" before the court would allow a deposition of high-level employee because defendant reasonably asserted that high-level employee was "extremely busy and did not have any direct knowledge of the facts"). If a deposition of a high-ranking official is sought, the party seeking the deposition "has the burden to show that the deposition is necessary." *Sun Capital Partners*, 310 F.R.D. at 527 (quashing deposition subpoena because the issuing party had not shown that any other person could not "adequately testify to the facts at issue").

Mr. Spector, now the President and Chief Executive Officer of PennyMac Financial Services, Inc., served as a Senior Managing Director at CFC. Spector Decl., ¶¶ 3; 4. As a Managing Director, he was not personally responsible for loan-level endorsements and had no involvement in tasks such as affixing his signature to mortgage notes. Spector Decl., ¶ 6. There were other employees at CFC specifically responsible for these tasks. Spector Decl., ¶ 8. Instead, Mr. Spector's position at CFC put him at the "apex" of the company as he was essentially the director of a subsidiary. In fact, a California Superior Court, deciding a petition for an order protecting Mr. Spector from a deposition subpoena similar to the Deposition Subpoena at issue in this Motion, has already explicitly held that Mr. Spector was an "apex" executive entitled to protections from harassing deposition subpoenas. *See* Request for Judicial Notice, Exh. A, at 2 ("Spector is considered an apex executive of Countrywide and shows that he lacks personal knowledge as to … the endorsement that appears on the note produced during discovery.").

As to the first factor, Plaintiff failed to ever consider whether Mr. Spector has any unique, first-hand knowledge of the topics Plaintiff seeks to discuss at his deposition. Indeed, Mr.

Spector has confirmed that the opposite is true. Not only does he not have *unique* knowledge about any of the topics, he has *no* knowledge regarding any of the topics related to events that occurred or policies in place after he left CFC in 2006. Spector Decl., ¶¶ 5; 10. Nor is it reasonable to expect Mr. Spector to have knowledge of CFC's business after his resignation. With regards to topics related to the use of Mr. Spector's stamp, and the policies and practices related to his stamp, Plaintiff has not asserted that there was anything unique about the use of Mr. Spector's stamp. Nor can he. Mr. Spector's stamp was used in accordance with the practices and policies CFC had in place at the time, and any current employee of Defendants that worked alongside Mr. Spector at CFC would be able to provide that same information. Spector Decl., ¶ 7. Finally, to the extent Plaintiff seeks to depose Mr. Spector in order to impeach other witnesses, there is no reason to believe that Plaintiff cannot obtain that same deposition testimony from anyone else.

Further, during the last meet and confer, Plaintiff confirmed that it had not deposed anyone else in the Action, and had not sought to first obtain this information from any other person, including the parties to this case. Blad Decl., ¶ 10. Plaintiff has failed to fulfill its burden under the "apex" doctrine by seeking deposition testimony from a senior executive without even attempting to first obtain this information from "less intrusive discovery methods." *Affinity Labs of Texas*, 2011 WL 1753982, at *15. In fact, Mr. Spector even offered a less burdensome alternative to Plaintiff, stating that he would submit a sworn declaration regarding the topics to which he had personal knowledge. However, Plaintiff rejected this alternative without an adequate explanation. Blad Decl., ¶ 10.

Finally, Mr. Spector respectfully requests that the Court, in ruling on this Motion, consider the number of actions involving loans made by CFC and the burden that appearing for depositions in each of these cases would place on Mr. Spector, particularly when he has little, if any, relevant knowledge regarding the loans at issue. The "apex" doctrine is in place to protect high-ranking officials from "numerous harassing depositions." *Noveshen*, 2016 WL 824640, at *4. Mr. Spector has already received subpoenas in a number of cases involving CFC, solely because his signature is affixed to the loans at issue. Over a decade after he resigned from the

company, he continues to receive these subpoenas requesting his deposition testimony. There is every reason to expect that, absent judicial intervention, parties to other cases involving CFC loans will be encouraged to seek Mr. Spector's deposition testimony, even though the issues in the cases will relate to events that occurred long after he left the company. It is unreasonable and harassing for Plaintiff to serve Mr. Spector with this Deposition Subpoena before first making an attempt to obtain this information from another source.

## IV. CONCLUSION

For the foregoing reasons and in light of the undue burden and likely harassment of Mr. Spector that will result from the deposition, Mr. Spector respectfully requests that this Court quash the Deposition Subpoena.

DATED: July 26, 2017

Lowenstein Sandler LLP

By: */s/ Leiv Blad*
      Leiv Blad (SBN 151353)

Attorney for Non-Party
DAVID A. SPECTOR